WILLIAM H. SHEARMAN, Respondent, *v.* THE NIAGARA FIRE
INSURANCE COMPANY, Appellant.

A contract valid in its inception, becoming void by virtue of its provisions,
may be revived by the act of the parties thereto. A condition of forfei-
ture in a policy of insurance may be waived, and the policy revived
after the happening of the event, which works the forfeiture, by any act
from which the consent of the underwriters may be inferred.

Defendant issued a policy of insurance to L. J. S. upon his dwelling-house.
The policy contained a clause, that if the property was sold or trans-
ferred, or any change took place in title or possession, without the
consent of the company, it would be void. The property was transferred
to plaintiff March 4th. The policy was renewed March 21st, and was
transferred to plaintiff April 15th, on the same day defendant's agent
consented to the transfer of the policy. L. J. S. remained in possession.
During a temporary absence he left the house in charge of B, and it
was destroyed by fire.

*Held*, that the renewal revived the original policy, and continued it with all
the virtue which it it would have had for any purpose, if it had not
expired. That the consent to the assignment was equivalent to an agree-
ment, to be liable to the assignee upon the policy as a subsisting operative
contract, for which agreement the retention of the premium received on
the renewal was a good consideration. That there was no change of
possession within the meaning of the contract.

(Argued November 17th, 1871; decided November 28th, 1871.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial district, affirming a judgment entered
upon a verdict in favor of plaintiff.

The action is brought to recover upon a policy of insurance
issued by defendant.

The defendant, with three other companies, issued a policy
insuring Lewis J. Shearman for one year from March 21st,
1866, for $2,800 on his dwelling, and $200 on shrubbery and
fencing, situate on Castle street, Wilmington, N. C., each
company to be severally liable for one-quarter. On Novem-
ber 22, 1866, the insurance was increased to $3,500.

On March 21, 1867, the policy was renewed for one year.
On March 4th, 1867, Lewis J. Shearman conveyed the pro-

perty to the plaintiff; and on April 15th, 1867, he delivered to the plaintiff the policy with the following assignment indorsed thereon:

"For value received I hereby assign, transfer, and set over to William H. Shearman all the right, title, and interest in and to the within policy, and all benefit and advantage to be derived therefrom.

"Dated at Wilmington, N. C., the 15th day of April, 1867.
                         "LEWIS J. SHEARMAN."

The companies simultaneously consented as follows:

"The insurance companies, within named, hereby consent that the interest of L. J. Shearman, in the within policy, be assigned to William H. Shearman, subject to all the terms and conditions therein mentioned and set forth.

"Dated at Wilmington, N. C., the 15th day of April, 1867.
                         "DE ROSSETT & Co., Agents."

The property was totally destroyed by fire in the night of June 4th, 1867. Lewis J. Shearman, the original assured, remained the occupant, a Mr. McGreal living with him. At the time of the fire Lewis J. Shearman was on his way back to Wilmington from taking his family to Brattleboro. Mr. McGreal was living in the house; and during Mr. Shearman's absence a Mr. Brown was taking care of the house for him. Of this the companys' agents were notified. Defendant moved for a nonsuit upon the grounds among others:

1. That the policy was a wager policy, having been renewed on March 21st, 1867, to Lewis J. Shearman, who had previously, on March, 4th, 1867, conveyed to the plaintiff, and had no insurable interest in the property.

2. That the conveyance to the plaintiff having been *prior* to the consent of the companys', the policy became void, and was not revived by the companys' subsequent consent.

3. That there was a change of possession.

The jury gave a verdict for the amount of the policy.

*S. Hand*, for appellant. L. J. Shearman's insurable interest ceased on assignment of property, and the renewal was a wager policy. (1 Parsons on Marine Ins., 56; *Fowler* v. *N. Y. Ind. Ins. Co.*, 26 N. Y., 422; Parsons on Marine Ins., vol. 1, p. 156; *Ruse* v. *Mut. Ins. Co.*, 23 N. Y., 516; *Peabody* v. *Washington Co. Ins. Co.*, 20 Barb., 340; *Gray* v. *Hook*, 4 N. Y., 449; *Bell* v. *Leggett*, 7 id., 176; *Springfield Ins. Co.* v. *Allen*, 43 id., 389.) If he had any insurable interest, it was so disproportioned to amount of insurance as to make policy void. (1 Parsons on Ins., 155; *Heath* v. *N. Y. Mut. Ins. Co.*, 8 Bosw., 557.) No assent to the transfer of the property was shown. This rendered policy void. (*Smith* v. *Sar. Mut. F. Ins. Co.*, 3 Hill, 518.) The policy having become void, nothing but an express contract could revive it. (*Baker* v. *Un. L. Ins. Co.*, 44 N. Y., 283; *Smith* v. *The Sar. Co. Mut. F. Ins. Co.*, 3 Hill, 508; *Neely* v. *The On. Ins. Co.*, 7 id., 49.) The agent had no power to to waive forfeiture. (*Wall* v. *Home Insurance Co.*, 8 Bosw., 597.)

*J. E. Parsons*, for respondent. Shearman's absence did not constitute change of possession. (*Jolly* v. *Balt. Eq. Soc.*, 1 Harr. & Gill, 295; *Rafferty* v. *N. B. Fire Ins. Co.*, 3 Harrison, 488; *Lyon* v. *Com. Ins. Co.*, 2 Rob. La., 266.) The consent to the assignment of the policy revived it. (*Solms* v. *Rutgers F. Ins. Co.*, 5 Abb., N. S., 201, 211; *Hooper* v. *H. R. F. Ins. Co.*, 17 N. Y., 424; *Wolf* v. *The S. F. Ins. Co.*, 39 id., 57; *Keeler* v. *U. S. Ins. Co.*, 16 Wis., 520; *Carroll* v. *Charter Oak Ins. Co.*, 38 Barb., 402; *Howard* v. *Alb. Ins. Co.*, 3 Denio, 303.) Shearman had an insurable interest. (*Stetson* v. *Mass. Ins. Co.*, 4 Mass., 330; *Ætna Ins. Co.* v. *Tyler*, 16 Wend., 385.)

CHURCH, Ch. J. The points relied upon by the appellants in this court, are the same presented upon a motion for a nonsuit, when the plaintiff rested, and again at the close of the evidence. They are, substantially: 1. That the property,

having been transferred without the consent of the company, the renewal of the policy afterward without such consent was void, and rendered the policy a wager policy, void both by statute and common-law.    2. That there was no evidence of a consent on the part of the company, to a transfer of the property to the plaintiff; and 3. That there was such a change of possession of the property as to render the policy void.

The property was transferred to the plaintiff on the 4th of March, 1867, the renewal was made the 21st of March, and on the 15th of April of the same year the policy was transferred to the plaintiff.    On the same day the defendant, by its agent, by an indorsement on the back, consented to such transfer of the policy.

It is well settled that the person insured must have an insurable interest in the property (26 N. Y., 422; 23 N. Y., 516); and one of the conditions of the policy is, that if any transfer of the title or possession of the property is made, without the consent of the company, the policy shall be void.

Assuming that when Lewis I. Shearman transferred the property he retained no insurable interest, I cannot assent to the position, that the policy thereby became a wager policy, and void in the sense that it was an illegal contract, and that it could not be revived and restored to life by the act of the defendant.    It was void, not for any vice or illegality in the contract itself, but for the reason that there was nothing upon which it could operate.    (*Howard* v. *Albany Ins. Co.*, 3 Denio, 301.)    The parties, it is true, agreed that in a certain contingency it should be void ; and if a loss had occurred during that period, no action could have been maintained upon the policy, but the happening of the contingency did not impress upon the contract the character of illegality, so that no subsequent agreement could restore it.    The case of *Gray* v. *Hook* (4 Comst., 449), cited by the learned counsel for the appellant, will serve to illustrate the distinction between a contract valid in its creation, which has become void by an act of the party so that it cannot be enforced, and

one that is illegal and contrary to public policy. In that case the cause of action grew out of an agreement between the plaintiff and defendant, by which one of them was to withdraw his application for appointment to an office by the governor in favor of the other, upon an agreement to divide the fees. The court very properly held that this agreement was contrary to public policy, and void at common-law, and being thus tainted, no new agreement entered into to carry into effect any of its provisions was valid. The same principle was decided by this court in *Woodworth* v. *Bennett* (43 N. Y., 273). But this principle is not applicable to the present case. Here the original contract was lawful and valid; it was not tainted with the vice of corruption or other illegality. It had become void according to its terms, and in that condition it could not be enforced; but it was not beyond resurrection by the act of the parties themselves.

I am aware that there is an intimation, by Bronson, J., in *Smith* v. *Saratoga County Mutual Fire Insurance Company* (3 Hill, 508), that a mere waiver would not revive such a policy. He says: "It is difficult to see how anything short of a new creation could impart vitality to this dead body." He did not, however, intend to decide the question of waiver, and added: "But it is unnecessary to put this case upon the ground that the forfeiture could not be waived;" and then proceeds to show that there had been no waiver.

In 7 Hill, 49, in a similar case, Beardsley, J., said: "Whether a policy, after having become void by the alienation of the property insured, can be restored to vitality by a mere act of waiver on the part of the underwriters, need not now be decided." Precisely what is intended as a "mere act of waiver" is not very clear; but it is probable that both of the learned judges intended to make a distinction, between such an act and an act which would amount to an agreement to revive and continue the contract.

I have been unable to find any adjudged case holding that such forfeiture may not be waived, and such policy revived, by an act from which the consent of the underwriters may

fairly be inferred. The authorities in this State and elsewhere are quite decisive that it may be done. (*Solms* v. *Rutgers Fire Ins. Co.*, 5 Abb., N. S., 201; *Howell* v. *Knickerbocker Fire Ins. Co.*, 44 N. Y., 276; *Wolfe* v. *Security Fire Ins. Co.*, 39 id., 51; *Hooper* v. *Hudson River Fire Ins. Co.*, 17 id., 424; *Carroll* v. *Charter Oak Fire Ins. Co.*, 38 Barb., 402; *Keeler* v. *Niagara Fire Ins. Co.*, 16 Wis., 523.)

It is claimed, however, by the counsel for the appellant, that, when the renewal was obtained, the transfer had been made, and that this renewal constituted a new policy, which was void and illegal within the principles before stated. I do not think so. The renewal simply revived the original policy, and continued it with all the virtue which it would have had, for any purpose, if it had not expired. Besides, Lewis J. Shearman had an insurable interest remaining, as lessee and owner of the equity of redemption, which may be deemed sufficient to obviate this objection.

The important question is, whether the forfeiture was waived and the policy revived by the consent of the defendant to the transfer of it to the plaintiff. In the case of an insurance upon goods, it has been held by this court, that a request that the company would consent to an assignment of the policy, was a sufficient notice to them that the party making it had acquired, or was about to acquire, some interest in the goods insured, and was a compliance with the condition of the policy on that subject. (*Hooper* v. *Hudson River Fire Ins. Co.*, 17 N. Y., 424; *Wolfe* v. *The Security Fire Ins. Co.*, 39 id., 49.) An assignment of the policy would be useless, for any purpose, unless the assignee had some interest in the subject insured. This interest may be as owner or encumbrancer, but whatever it is, the underwriters by consenting to the assignment, agree to become answerable to the assignee, to the extent of whatever interest he has, and if the whole interest is transferred, the consent is equivalent to an agreement to be liable to the assignee upon the policy as a subsisting operative contract. I see no reason why the same rule should not apply to a policy upon real, as well as

personal property, but it is unnecessary in this case to determine that the request to assign was a sufficient notice of the transfer of the property, because it expressly appears that the agent was informed of the fact at the time the request was made. It is objected that the agent was not informed of the time of the transfer, nor that the renewal was subsequent to the transfer, but this is not material. It is enough that the plaintiff requested that he should be substituted as the insured, on the ground that the property had been transferred to him, and the company consented to it. It is of no importance whether his conveyance was recent or remote, nor whether they knew that the policy was void at the time of the renewal by reason of the transfer before that time. They might have insisted upon the forfeiture if they so elected, at whatever time it was made. They knew that the policy was void when the request was made, and they chose to revive it, and thereby consented to insure the property in the hands of the plaintiff as effectually as if they had given a new policy to him. The retention of the premium received on the renewal, was a good consideration for this agreement. No other construction can be given to the transaction. The condition requiring consent is important to underwriters, to enable them to determine the character and standing of the insured; and when they agree to a transfer of a policy to a particular person, knowing that he owns the subject insured, the whole purpose of the provision is complied with, and they have no interest to know how or why he acquired it.

The only remaining point made is, that possession of the premises was changed, which rendered the policy void. Lewis J. Shearman remained the occupant of the premises, and was temporarily absent with his family at the time of the fire. The house was in charge of one Brown for him. This is not such a change of possession as will avoid the policy. Brown's possession was in fact and in law Shearman's possession. He was nothing more than the servant of Shearman, to take care of the house during the temporary absence of the latter with

his family. The construction claimed for this provision is altogether too strict and technical. It is never contemplated that the insured shall constantly remain on the premises.

For aught that appears, the person left in charge was a proper and competent agent or servant for that purpose, and there is no claim that the fire occurred through his negligence or fault. The judgment must be affirmed.

All concur.

Judgment affirmed.