EVANS v. UNITED STATES LIFE INSURANCE COMPANY.

*Insurance — life policy — condition avoiding policy. Waiver — what is not.*

A life insurance policy contained a provision that if the insured should, without the written consent of the insurer, " between the 1st of July and 1st of November, visit those parts of the United States which lie south of the southern boundaries of Virginia and Kentucky, this policy shall be void." The insured had a permit allowing him to remain south until July 1. He remained after that time. On the 27th of October, when the premium on the policy was due, an agent of the insured tendered it to the insurer. The one in charge of the office of the insurer demanded an additional premium on account of the insured being south, and promised to keep the policy alive until the next day, to enable the agent to communicate with one interested in the policy. The next day an agent tendered the amount of the premium and additional premium, which was refused on the ground that the policy had lapsed by reason of non-payment of the premium and extra risk. *Held,* (1) that by reason of the insured remaining south after the time permitted, the condition of the policy was broken and the policy void, and (2) that the acts of the insurer did not amount to a waiver of the condition.

APPEAL by defendant from a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought by William Evans against The United States Life Insurance Company, in the city of New York, upon a policy issued by defendant upon the life of one Charles A. Starr, in favor of one Leddell, and by Leddell assigned to plaintiff after the death of Starr. Sufficient facts appear in the opinion.

*Edgar S. Van Winkle,* for appellant.

*William W. Northrup,* for respondent, cited *Post* v. *Ætna Ins. Co.,* 43 Barb. 363; *Forbes* v. *Am. Mut. Life Ins. Co.,* 15 Gray, 249; *Pope* v. *Dinsmore,* 8 Abb. 429; S. C., 29 Barb. 367; Story on Agency, §§ 127, 133; Bliss on Life Ins., §§ 266, 267; *Carroll* v. *Charter Oak Ins. Co.,* 10 Abb. (N. S.) 166; *Kolgers* v. *Guard. Life Ins. Co.,* id. 176; *Sheldon* v. *Atl. F. and M. Ins. Co.,* 26 N. Y. 460; *Liddle* v. *Market F. Ins. Co.,* 29 id. 184; *Boehen* v. *Williamsburg City Ins. Co.,* 35 id. 131; *Shearman* v. *Niagara F. Ins. Co.,* 46 id. 526; *Bodine* v. *Exchange F. Ins. Co.,* 51 id. 117; *Ripley* v. *Ætna Ins. Co.,* 30 id. 136, 164; *Trustees First Baptist Church* v.

*Brooklyn F. Ins. Co.*, 19 id. 305; *Fried* v. *Royal Ins. Co. of Liver-
pool*, 47 Barb. 127.

Present — BARNARD, P. J., TAPPEN and DONOHUE, JJ.

TAPPEN, J.   This is an appeal from a judgment entered in Kings
county on the report of a referee in favor of the plaintiff.

The defendants, on the 28th of October, 1869, issued a policy on
the life of Charles A. Starr for $6,500, payable at his death to
Samuel Leddell.   Shortly after Starr went to Louisiana, where he
remained until his death, on the 18th day of March, 1872, and
Leddell thereafter assigned his claim on the policy to the plaintiff.
Starr had a written permit from the company, dated November 1,
1869, to go to New Orleans to reside there and return, the permit
to expire July 1, 1870.   When payment of premium was due, Octo-
ber 27, 1870, Leddell sent an agent to the company's office to pay it;
the person in charge of the business at such office required an addi-
tional premium of two and a half per cent, because Starr was down
south.   This agent the witness, Phenix, testifies: "I asked him if
he would keep the policy alive until the next day, when I would see
Mr. Leddell; he said he would; there were two gentlemen inside
the desk; I told Mr. Leddell the circumstances."   Another witness
testifies, that he, by Leddell's direction, went the next day to the
company's office and tendered all the regular and extra premiums
required by the company, and the company's officer refused the
money, saying the policy had lapsed by non-payment of premium
and extra risk the day before; this officer then said, that if they
had promised to carry it over they had no right to and could not.

The defense is that the policy, by its terms, became void for the
non-payment of the yearly premium of $156.32 on the 28th of
October, 1870, the day it became due; and further, that Starr's
residence south after July 1, 1870, was without the company's con-
sent, and avoided the policy.

One of the provisions of the policy was, that "if said Starr,
without the previous written consent of the company should
*   *   *   *   between the first of July and first of November visit
those parts of the United States which lie south of the southern
boundaries of the States of Virginia and Kentucky, this policy shall
be null, void and of no effect."

The permit which expired July 1, 1870, was not renewed; the

plaintiff says, and the referee has found, that Starr was unable to return north, being too feeble to travel; he did ride to and from a plantation in a buggy wagon; there is no proof of any effort or intention on his part to return north. The policy, therefore, ceased to have any valid force against the defendants after July 1, 1870; how then was it restored to life? The plaintiff contends that the defendants waived the forfeiture, and in effect made a new agreement, that if he paid the regular premium, and an extra premium of two and a half per cent, they would accept it and continue the policy, and that they further agreed to extend the time of such payment one day after the premiums were due.

.The regular yearly premium of $156.32 was tendered at defendants' office, as before stated; the witness, proving the tender, further testified: "I had no authority to give more than Mr. Liddell gave me ($156.32); I asked if he (the person to whom tender was made) would keep it good; that is, keep the policy alive until to-morrow, and let the matter stand, so that I could see Mr. Liddell; he said he would;" and Liddell sent the next day, making full tender, as proven by a witness before quoted, and it was refused.

On the part of the defendants, the several officers of the company and their assistants, who were such, and in charge of the office business during the period covered by the testimony, testify, that they had no recollection of any such transaction, and some of them positively state that, as to them, no such promise or tender was made.

Assuming that there is evidence to support the referee's finding on that point in favor of the plaintiff the promise was not binding on the defendants; it was a naked promise without consideration; it does not present the single question, whether the defendants gave an extension of time to pay the premium, but whether the defendants, on such promise, can be held bound to reinstate a policy already void, and which had ceased several months previous to be of any force, not because of the non-payment of any premium, but because of the violation of an express condition forbidding a residence in a certain portion of the south after a certain time of year.

Within the case of *Smith* v. *Saratoga Co. M. F. Ins. Co.*, 3 Hill. 508, the policy was dead, and the company "had the right to insist upon an absolute forfeiture ; a new creation was necessary to impart vitality to the policy."

The company may waive any condition in its policy inserted

for its own benefit, and there must be proof of such waiver, and of intent to reinstate the policy and of a valid agreement affecting that purpose. A valid agreement is not established in this case; this is not the case where a party has impliedly the company's consent to an extension of time to pay premium, and acts thereupon. In such case the doctrine of forfeiture finds no favor with the courts. Nor was it a waiver of prompt payment within *Buckbee* v. *United States Ins. An. & Trust Co.*, 18 Barb. 541, but it is the taking of a risk, the terms of which were the subject of a new agreement arising out of the continued residence of the assured in a state or country prohibited by the policy, and in such case the doctrine of waiver, if applied at all, should be applied with great care.

Here there was no policy in force on the day the plaintiff tendered the ordinary premium. A violation of its provisions, commencing immediately after the first of the preceding month of July, had exempted the company from liability. On the day the plaintiff tendered the premium, and the defendants refused to receive it, the plaintiff could not then have compelled defendants to receive any premium even at an enhanced rate, or to continue the policy in force on any terms. He, therefore, had no rights which he could enforce against them on the day he tendered premium, and he acquired no new rights against them by reason of any of the occurrences of that day, for the company had the right long previous to, and on that day, and subsequently, to treat the policy as void by reason of a violation of a material condition on the part of Charles A. Starr, and that right was not lost to them from any thing that was said or done at their office on the day in question. Undoubtedly forfeitures may be waived and policies revived, but there must be some act from which the underwriter's consent is to be fairly inferred. *Shearman* v. *Niagara Ins. Co.*, 46 N. Y. 530.

The case is not brought within the rule of waiver, and no valid agreement reviving the policy or continuing the risk is established.

There are two questions involved in the case. One arises from a positive breach of a condition as to residence, and when established it avoids the contract from the very nature of the agreement between the parties; the other arises from the non-payment of money on a specified day. Where money is in question, time is not the essence of the contract. *Stone* v. *Ellis*, 9 Cush. 95. And an acceptance after the day, or a promise made before to accept

payment after the day, will prevent a forfeiture. 1 Smith's Leading Cases, 105.

Upon the first proposition, we think the judgment should be reversed and a new trial had, costs to abide event.

*Judgment reversed and new trial ordered.*