FLORENCE M. GIBBS, Respondent, *v.* THE CONTINENTAL INSURANCE COMPANY, Appellant.

*Policy of insurance — agreement to refer question of amount of loss to arbitration — when not enforceable — waiver of — When house unoccupied — False valuation — must be fraudulent to avoid policy.*

The defendant issued to the plaintiff a policy of insurance upon certain personal property, by which it agreed to make good unto the assured all such ·immediate loss or damage as should happen by fire to the property specified, *the amount of loss to be estimated according to the actual cash value of the property* at the time of the loss.

In the ninth condition of the policy it was provided that in case differences should arise touching any loss or damage, after proof had been received in due form, the matter should, *at the written request of either party,* be submitted to impartial arbitrators, whose award in writing should be binding on the parties as to the amount of such loss or damage, but should not decide the liability of the company under the policy.

In the tenth condition of the policy it was provided that no suit or action against the company, for the recovery of any claim by virtue of the policy, should be sustainable in any court of law or chancery, *until after an award shall have been obtained, fixing the amount of such claim in the manner above provided.*

In this action, brought to recover the amount due thereunder, upon the destruction of the property, the defendant claimed that a difference had arisen as to the value of the property destroyed, and that as no award had been made by arbitrators, no recovery could be had under the policy. Neither party had requested, either in writing or otherwise, that the matter should be submitted to arbitrators.

*Held,* that by the terms of the ninth condition, no obligation to submit the amount of the loss to arbitrators arose, until a *written request* so to do had been made by one of the parties.

*Semble,* that the condition as to submitting the amount of the loss or damage to arbitrators was only collateral. to the main agreement of the defendant, which was to pay the amount of the loss, "to be estimated according to the actual

cash value of the property at the time of the loss," and that such collateral agreement did not deprive the plaintiff of the right to maintain an action on the policy until such reference and an award, in pursuance thereof, had been had.

*Semble*, that as the defendant, by its answer, denied its liability for any part of the loss, on grounds specifically stated therein, it thereby waived the condition requiring an arbitration, as the amount of the loss was immaterial, if the company insisted that it was not liable for any portion thereof.

The policy further provided that, "if the premises should become unoccupied without the consent of the company indorsed thereon, then and in every such case the policy should be void." The plaintiff had for some time before the fire, slept in the adjoining house, which belonged to her daughter, but had never abandoned the premises; her furniture and wearing apparel remaining there, and she returning and spending the day there.

*Held*, that the house was not unoccupied within the meaning of the condition.

Another condition of the policy provided that all fraud or attempt at fraud, by false swearing or otherwise, should cause a forfeiture of all claim on the company.

*Held*, that it was not enough to constitute a breach of this condition; that the insured in making out proof of loss, had overvalued an article destroyed by the fire, even though it appeared that she knew or ought to have known that the valuation was excessive, unless such overvaluation was made with a fraudulent intent.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict of a jury, and from an order denying a motion for a new trial, made upon a case and exceptions.

*E. C. James*, for the appellant.

*J. A. Hathaway*, for the respondent. The house was not occupied within the meaning of the conditions of the policy. (*Gamwell* v. *M. U. Ins. Co.*, 12 Cush., 167; *O'Neil* v. *The Buffalo F. Ins. Co.*, 3 Com., 122; *Wastburn* v. *City F. Ins. Co.*, 15 Wis., 138; *Cummings* v. *Agri. Ins. Co.*, 5 Hun, 554; *Paine* v. *Agri. Ins. Co.*, 5 S. C., 619; *Rann* v. *Home Ins. Co.*, 59 N. Y., 387; *Gates* v. *Madison Ins. Co.*, 1 Seld., 469; *Sherman* v. *Niagara Ins. Co.*, 46 N. Y., 532; *Kelly* v. *Home Ins. Co.*, 2 Weekly Digest, 479.)

TALCOTT, J. :

This is an appeal from a judgment in favor of the plaintiff, entered on a verdict at the Oswego Circuit, and from an order refusing a new trial.

The plaintiff owned a two-story frame dwelling-house, situated on Oneida street, in Oswego. On the 7th day of March, 1873, the defendant, through E. J. Harmon, its agent at Oswego, issued its policy insuring the plaintiff against loss or damage by fire in the sum of $2,000 on the house and $1,200 on the furniture, wearing apparel, etc., therein, for one year. On the 7th day of March, 1874, the policy was renewed for one year. On the night of the 22d day of October, 1874, the said property so insured was damaged by fire. On the 4th day of November, 1874, the plaintiff made proof of loss in due form, stating the damages by the fire to the house to be $4,000 and to the personalty at $3,326.86. The articles of personalty exceeded 1,000 in number. By the ninth condition of said policy it is provided as follows : " In case differences shall arise touching any loss or damage, after proof has been received in due form, the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the company under this policy, and it shall be optional with the company to repair, rebuild or replace the property lost or damaged with other of like kind or quality within a reasonable time, giving notice of their intention so to do within sixty days after receipt of proofs herein required."

The tenth condition of said policy was as follows : " It is furthermore provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within twelve months next ensuing after the loss shall occur ; and should any suit or action be commenced against the company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

The bill of exceptions states that it was proved that shortly after the proofs of loss were received, the agent and adjuster of the defendant called upon the plaintiff with the proofs of loss, and that differences then and there arose between the plaintiff and the defend-

ant, touching the loss or damage sustained by the plaintiff, and that they disagreed in every thing as to values, and disagreed as to the amount of loss. The bill of exceptions contains the statement that "no proof was offered by either party to show that after these differences arose, any thing was done or any request was made by either party to submit the question of the amount of such loss to arbitration, or to show any thing which prevented the submission of such question to arbitration before action brought, or to show any waiver of the requirements of the policy in respect to such arbitration."

The defendant moved for a nonsuit upon the ground that this action cannot be maintained until after an award of arbitrators, fixing the amount of the loss. The question was reserved by the court, with other questions in the case, and was finally decided against the motion for a nonsuit, and judgment was ordered for the plaintiff in the action, after argument at Special Term.

While prospective contracts to arbitrate all matters of difference which may arise between the parties have been held void as tending to oust the courts of jurisdiction, and hence contrary to public policy (*Hurst* v. *Litchfield*, 39 N. Y., 377), yet it may be considered as the settled law of this State that contracts to arbitrate a particular subject-matter, such as the *amount* of a loss or the *value* of property, etc., are not only valid and binding on the parties, but may be made by agreement a condition precedent to the right to maintain an action involving such amount or value.

In this case, however, the agreement to refer to arbitration was a collateral contract to the main contract, by which the insurance company agreed in the policy to " make good unto the assured, her executors, etc., all such immediate loss or damages  *  *  *  as shall happen by fire to the property so specified.  *  *  *  The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid in sixty days after proof of the same, required by the company, shall have been made by the assured and received at this office, and proved in accordance with the terms and provisions of this policy."

In the case of *Scott* v. *Avery* (5 House of Lords Cases, 811), principally relied upon by the defendant's counsel, there did not

appear to be any independent agreement to pay the amount of the loss within a specified time. The question there presented is briefly stated by CROWDER, J., one of the judges who, in the House of Lords, delivered an opinion in favor of sustaining the judgment of the Exchequer Chamber, thus : " The question, then, seems to resolve itself into this, whether such a contract can legally be made so as to bind the contracting parties ? Can a shipowner and insurer enter into a valid agreement, that the shipowner shall pay down a given sum, and that in consideration of such payment the insurer, upon the loss of a given ship, shall pay to the said owner not the amount of the loss sustained by him through the perils of the sea, but only such a sum of money as shall be settled and ascertained by arbitration ? I am not aware of any legal objection to such a contract, whatever may be thought of its prudence, and I think the effect of such a contract is that no action lies for the breach of it until the sum has been ascertained by arbitration."

Mr. Justice CRESWELL, in the same case, says (see page 838): " for if there is an ordinary contract of insurance, that would give a right of action immediately on the happening of the loss, and a rule (condition) requiring the assured to wait for an adjustment of the loss by the committee would be repugnant to the contract."

In *Roper* v. *Lendon* (1 Ellis & Ellis, 825), Lord CAMPBEL, who had delivered one of the leading judicial opinions in *Scott* v. *Avery*, in the House of Lords, held that a plea setting up a condition substantially like the one in this case, and that the company had never declined, but had always been ready to refer such dispute to the judgment and determination of two indifferent persons as arbitrators in the manner provided for by such condition, of which the plaintiff had notice before suit, and that the said dispute or difference, " and the amount of the plaintiff's supposed loss or damage, had never been determined, as by the same condition is provided " was bad, saying : " The agreement to refer, contained in the fifteenth condition, is merely collateral to the agreement to pay. The courts will not, therefore, treat the agreement to refer as ousting their jurisdiction until there has been a reference."

And HILL, J., in the same case, said: " The case is clearly, not within the case of *Scott* v. *Avery*. Here the agreement to refer is collateral to the agreement by the company to pay ; there

the agreement was to pay only such sum as the arbitrators should award."

The case of *The President of the Delaware and Hudson Canal Company* v. *The Pennsylvania Coal Company* (50 N. Y., 250) was also much relied upon by the counsel for the defendants to show that the reference to arbitrators in this case was a condition precedent to the right of the plaintiff to maintain any action upon the policy. In that case it appeared that the Delaware and Hudson Canal Company, proposing to enlarge their canal, entered into a contract with the defendants whereby it was in substance " agreed that the canal company might charge an increased toll on the coal which should be transported through the canal by the defendant, the amount of such increased charge to be based upon the estimated costs of transportation per ton on said canal after the enlargement should have been made, which increased charge was to be one-half of the estimated reduction in the cost of transporting the coal, effected by such proposed enlargement; and if the parties should not agree on the just and proper amount of reduction produced by the proposed enlargement, then the contract provided that the question should be submitted to two person, one to be chosen by each party, and if these two were unable to agree, they were to choose a third person, and the report of a majority of the three to be final on the subject of the amount the defendant was to pay by way of additional toll."

ALLEN, J., delivering the majority opinion, says: " The plaintiffs, under the agreement, secured to themselves the right to certain tolls, absolutely, for the use of their canal, to be ascertained from year to year in the manner and by the rules prescribed. * * * the defendant undertook to pay in addition to the toll before then chargeable at a rate *to be established* after the canal enlargement should be completed in the manner particularly prescribed, and arbitration was the final resort agreed upon to establish the rate and amount of toll in case the contracing parties should not be able to agree, and the decision of the arbitrators was to be final in the premises. * * * The manner by which the rate of toll was to be established was by the agreement of the parties or, that failing, by arbitration. * * * The right of the plaintiffs is only to an additional rate of toll *" to be established"*

and the ageement prescribes the rule and designates the means and agency by which the additional toll is to be computed, estimated and thus established. The right of the plaintiff to demand, and the obligation of the defendants to pay, additional toll is restricted to the rate to be established pursuant to the agreement. * * * The clear and plain intent of the parties was that the additional rate of toll should " be established" as preliminary to the right of the plaintiffs to charge and collect. * * * Neither party contemplated the possibility of, or would have agreed to, a rate of toll to be determined by a jury in an action which the plaintiffs might bring for the recovery of the toll upon the first cargo of coal that might pass through the canal after the enlargement," and he adds, " Scott v. Avery (supra) is, in principle, on all-fours with the case at bar, and unless we are prepared to overrule or disregard it, is decisive."

The contract to refer in the case in 50 New York, it will be seen, was not deemed a collateral contract, but the only mode by which the amount to be paid could be determined. There was no agreement to pay any amount in that case, except as should " be established " in the manner prescribed by the agreement. In the opinion in the case in 50 New York, ALLEN, J., recites the case of Roper v. Lendon (1 Ellis & E. [L. B.] 825) as belonging to a class of cases " which involved the validity of covenants which deprived the parties of the protection of the courts, and ousted the court of all jurisdiction." Whereas we have seen that the case of Roper v. Lendon was placed upon the ground that the agreement to refer to arbitration was collateral to the main contract.

Adams v. Willoughby (6 Johns., 65, 67), so far as it is an authority on this subject, seems to stand on the same ground as to the " unliquidated demands " mentioned in that case. There was no obligation on the part of the defendant to pay any sum, except such sum as the arbitrators should determine was due to the plaintiff from Josiah Fuller. As there was no reference to arbitration to determine the amount of the unliquidated sums, there was no mode by which the amount to be paid by Willoughby could be ascertained.

In Stephenson v. Piscataqua Fire Insurance Company (54 Maine, 55) it was held, after considering the case of Scott v. Avery (supra), that a condition in a policy similar to that in question, was void,

because it deprived the parties of the protection of the law, and tended to oust the courts of jurisdiction.

The insurers in this case have apparently sought to avoid the effect of that and similar decisions by ingeniously adding to the condition that the award of the arbitrators should be binding as to the amount of the loss, "but shall not decide the liability of this company under this policy," and possibly they have escaped the general condemnation of such conditions, as being contrary to public policy, by this provision. However that may be, we think the condition is collateral to the main contract, which is "to make good unto the said assured * * * all such immediate loss and damage, * * * as shall happen by fire to the property so specified * * * not exceeding in amount the sum or sums insured as above specified * * * the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss." And although if a reference to arbitration had taken place under the condition, perhaps the award would have been conclusive as to what that cash value was; yet, as no such reference had taken place, we do not think the plaintiff was, by the collateral agreement to refer, deprived of the right to maintain an action on the policy until such reference and an award in pursuance thereof had been had.

But aside from the question whether the contract to refer to arbitration was collateral to the obligation to pay, and the obligation not dependent upon the result of the agreement to refer, we think, by the terms of this contract, the contingency, upon the happening of which the obligation to refer to arbitration would arise, does not appear to have happened. The duty to submit to arbitration was, by the ninth condition, made to depend upon the "written request of either party," and the tenth condition restraining any suit or action for the recovery of any claim by virtue of the policy, does not operate unless an arbitration shall be requested in "writing in the manner above provided."

We think, therefore, that even if the submission to arbitration might be a condition precedent to the right to maintain an action on the policy, provided a written request for such an arbitration had been made by either party; yet that such "written request," by one or the other of the parties, was of itself, a condition precedent to the right to require an arbitration, and that no obliga-

tion to submit to arbitration arose until such written request was made by one or the other of the parties. It seems that no evidence was offered by either party to show that there was any such request within the sixty days, at the expiration of which time the loss was payable, and the plaintiff, as we think, had, at the expiration of that time, a right to assume, in the absence of a written request, that the defendant did not desire to have the question of the amount of the loss submitted to arbitration, but chose to rely on one or more of the numerous defenses set up in the answer.

To give these conditions such a construction as is insisted upon by the counsel for the defendant, would be to ignore the prerequisite of a written request, and to, in effect, hold that those words in a condition, either have no meaning at all, or else to debar an action on the policy for an indefinite time, although neither party desires an arbitration. · The insurance company knew that a case had arisen in which arbitration might be required, if requested, to wit: " differences touching loss or damage." It refrained from requesting any submission of these differences to the arbitration provided for by the conditions of the policy, and the attempt now to set up that no action can be maintained on the policy, until such an arbitration has been had, operates as a surprise upon the plaintiff who, as we think, was justified in supposing that the defendant, having made no request for an arbitration, did not desire any. The language of the condition was calculated to lead the assured to suppose that, in the absence of any request for an arbitration on the part of the company, no arbitration was necessary as a condition precedent to the right to sue for the amount of the loss and damage, " to be estimated according to the actual cash value of the property at the time of the loss." And we think that the omission of the company to signify its desire for an arbitration within the sixty days, was "a waiver of the ninth and tenth conditions, on its part.

The answer of the company denies its liability for any part of the loss, upon various grounds, specifically alleged in the answer. It has been held, in various cases, that the condition to arbitrate concerning a loss where differences arise as to the amount, is waived where the insurance company denies its liability for any loss, whatever the amount may be. Because the *amount* of the loss is imma

terial, if the company insists it is not liable for any loss, and is calculated to mislead the insured as to the true grounds of the objection of the company to the payment of the loss. (See *Robinson* v. *Georges Ins. Co.*, 17 Maine, 131; *Mentz* v. *Armenia Fire Ins. Co.*, 79 Penn. St., 478.) But without resting our decision upon this ground, we are of the opinion that the plaintiff had a right to waive a submission to arbitration, which she has done by omitting to request one, and that the defendant has also waived the condition, by refraining from making known its desire for an arbitration, in the manner provided for in the condition.

The second exception presented by the defendant for our consideration is founded upon a further condition in the policy, as follows: "If the premises become unoccupied without the consent of this company indorsed hereon, * * * then and in every such case this policy shall be void." The evidence in the case showed that the plaintiff had slept at night for some time, but for how long it did not clearly appear, at her daughter's house, who lived in the adjoining house to the one which was occupied by the plaintiff, but she had never abandoned the premises, and although lodging in her daughter's house, her furniture and wearing apparel was left at her own. She returned daily to the premises insured, and, as we understand the testimony, spent the day there. This was not such an abandonment of the insured premises or ceasing to occupy as is within the meaning of the condition referred to. (*Shearman* v. *Niagara Ins. Co.*, 46 N. Y., 532; *O'Niel* v. *The Buffalo Fire Ins. Co.*, 3 Comst., 122; *Cummins* v. *The Ag. Ins. Co.*, 67 N. Y., 260; *Gamwell* v. *M. and F. Ins. Co.*, 12 Cushing, 167.)

Though the answer of the court to the request of the plaintiff's counsel may be understood as taking the question, whether the house had become unoccupied, within the meaning of the condition, from the jury, we think the charge that the house was not proved to have become unoccupied within the meaning of the condition, taken in connection with the explanation contained in the former part of the charge, as to what was ceasing to occupy within the meaning of the condition in question, was correct.

The third exception, taken by the counsel for the defendant, was founded upon the fact that in the proofs of loss furnished by the

plaintiff to the company, she had stated the value of a piano at $400, whereas, it was shown by a witness, from whom she purchased the piano about fourteen years before the trial, that she bought it for $300, and that in the opinion of the witness, if well used, it would probably be worth at the time of the fire, no more than from $125 to $150. The plaintiff had stated, on her examination as a witness, that she put down the values at what she remembered the articles cost, as near as she could; that she could not remember what the piano cost, but that a music dealer had offered her $400 for it in exchange for another piano. It was proved by another witness, an expert, that he knew the piano in question, that it had been used very little, and that, in his judgment, the piano at the time of the fire was worth $300.

At the close of the charge to the jury, the defendant's counsel asked the court to charge "that if the jury find that the plaintiff, in her proofs of loss, knowingly put false valuations upon her property destroyed, that her policy is forfeited and she cannot recover." The court refused so to charge unless the word "*fraudulently*" should be inserted in the request. The import of the ruling of the judge was that the overvaluation placed upon her property by the plaintiff in her proofs of loss, even if she had reason to know or ought to have known that such valuation was above the market value, did not occasion the forfeiture of the policy unless done with intent to defraud the defendant. The condition of the policy which bears upon this subject is as follows, a part of the ninth condition: "All fraud or attempt at fraud by false swearing or otherwise shall cause a forfeiture of all claim on this company under this policy;" and we think the justice at the Circuit was correct in holding that a fraudulent intent was a necessary ingredient in the false valuation, even though there might be evidence from which the jury might have come to the conclusion that the plaintiff knew or had the means of knowing, or ought to have known, that the valuation in the proofs of loss was over-stated. (*Ins. Co. v. Weides*, 14 Wall. [U. S.], 375; *Unger v. The People's Fire Ins. Co.*, 4 Daly, 96; *Wolf v. Goodhue Ins. Co.*, 43 Barb., 400; *Sturm v. Gt. Western Ins. Co.*, 40 How. Pr., 423; *Owens v. The Holland Purchase Co.*, 1 Sup. Ct. [T. & C.], 285; *Hickman v. The Long Island Ins. Co.*, 1 Edw., 374.) Overvalua-

tion may afford evidence of a fraudulent intent, but is not of itself conclusive evidence of such an intent.

Most persons would be apt to set a value upon articles which they have had long in their possession, as personal belongings, especially articles of furniture, far in excess of what they would be appraised by an auctioneer or dealer in second-hand furniture. They may be, and usually are to the owner, of more value than could be obtained in the market, and the requisition by the judge at Circuit, that the overvaluation must have been not only knowingly but with a fraudulent intent, was within the very terms of the condition of the policy, which, it was claimed, had been violated by the statement of the value in the preliminary proofs of loss.

The remaining exceptions to which our attention is called relate to the admission of evidence which was objected to, and we think that so far as the rulings are liable to criticism, they were upon immaterial matters, which could not have influenced the result, and on the whole bill of exceptions we think the judgment should be affirmed.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment and order of the Special Term affirmed.