SALLY ANN HOWELL, Appellant, *v.* THE KNICKERBOCKER LIFE INSURANCE COMPANY.

Where a policy of life insurance contains an agreement for the continuance of the policy in force until the decease of the person whose life is insured, provided that the assured shall duly pay or cause to be paid annually, on or before a specified day in each year, a certain premium, payment upon the day specified is a condition precedent, and, unless performed, the policy is no longer in force, although performance is prevented by act of God.

Although the person whose life is insured is stricken with a fatal disease during the continuance of the term of insurance, so as to be in a dying

condition, this is not sufficient to establish the loss insured against, and, if he actually survives until the term expires, the insurer is not liable.

An admission on the trial that, at a time subsequent to the insurance, when an annual premium was paid, it was agreed that, if anything should happen to prevent payment of the premium on the day specified, the policy should not thereby become void, but should continue in force for a reasonable time thereafter, so that the premium could be paid, admits a valid agreement; and, payment having been prevented by act of God and the premium tendered within a reasonable time thereafter, the insurer is bound. This is so, although the person whose life is insured dies, after the day of payment and before the tender. (HUNT and LEONARD, CC., *contra.*)

(Argued January 5th; decided May 1st, 1871.)

APPEAL from an order of the General Term of the New York Superior Court, setting aside a verdict in favor of the plaintiff and dismissing the complaint.

On the 15th July, 1853, the defendant, on the application of George R. Howell, on behalf of the plaintiff (his wife), insured his life for one year in the sum of $5,000, for the benefit of the plaintiff and his·children, the policy being issued to the plaintiff in behalf of herself and children. It contained this clause following:

"And it is hereby agreed that this policy may be continued in force from time to time until the decease of the said George R. Howell, provided that the said assured shall duly pay or cause to be paid to the said company annually, on or before the 15th day of July in each and every year, the sum of one hundred and thirty-eight $\frac{50}{100}$ dollars."

The following condition, among others, was printed on the back of the policy:

"No insurance, whether original or for which a renewal receipt has been issued by the company, shall be considered as binding until the actual payment of the premium."

It was admitted that the premium was punctually paid by George R. Howell on the 15th day of July of each year, until 1862, and, on the morning of the 15th of July, 1862, he left his house for his place of business, in apparent good health, intending to pay the premium for the continuance of

the policy; that, about ten o'clock of that day, he was struck with apoplexy and paralysis, which proved to be fatal, and rendered him helpless and speechless; "that he continued from that time in a dying state and condition, wholly uncon- scious, and unable to attend to any business, until the next day, that is to say, the 16th day of July, 1862, when he ceased to breathe, and the premium was not paid on the day it was due, solely by reason of the illness of George R. Howell."

The premium was tendered to the company by the plain- tiff the day after the funeral of her husband, and was not accepted or received. Proof of the death of the insured was made.

On the trial the defendant admitted the fact to be (at the same time objecting thereto as irrelevant, and excepting to the decision of the court overruling such objection), that, at the time of making the policy, and before and since that time, it was the usage and custom of the defendant, in deal- ing with persons whose lives were insured by it, upon the same terms and with the like policies as the one in this case, to allow the assured, or the party for whose use the insurance was made, some extension or days of grace within which to pay the annual premium, beyond the time fixed by the policy for the payment thereof; that, according to such usage and custom, the defendant was, and continued to be, in the prac- tice of receiving the annual premiums upon like policies after the time when the same, by the terms of such policies, became payable, and of treating the same as valid payments upon the said policies, which continued the same in full force, without a new agreement of insurance, or a new policy, and that such usage was known to George R. Howell.

The defendant also admitted the fact to be (taking the like objection and exception), that the policy in question was made and issued, and the insurance effected, upon and in reference to such usage; and that it was understood and agreed, by and between the defendant and George R. How- ell, at the time the insurance was effected and the policy was

issued, and also thereafter, when the annual premium was paid, that if anything should happen to him to prevent his paying such premium on the day whereon the same became payable, the policy should not thereby become null and void, but should continue in full force for a reasonable time thereafter, so that the said premium could be paid; that, by the act of God he was prevented from paying the premium on the 15th day of July, 1862, and that the same was tendered and offered to the defendant within a reasonable time thereafter.

The case below is reported.   (3 Robertson, 232.)

*Stephen P. Nash*, for the appellant, insisted that the policy, being for life, was not forfeited by the omission to pay July 15th, 1862.   The premium became due then, and constituted a debt.   The construction which would create a forfeiture will not be favored.   (4 Kent, 132.)

But if payment was a condition, it was a condition subsequent, not precedent, to defeat an insurance made and running; not precedent to an insurance taking effect.   (*Nicoll* v. *N. Y. and Erie R. R. Co.*, 2 Kern., 121.)   If subsequent, demand of the premium was necessary to a forfeiture.   (*Van Rensselaer* v. *Jewett*, 2 Comst., 141; *Hogeboom* v. *Hall*, 24 Wend., 146; *Moore* v. *Smith*, 24 Ill., 512; *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.*, 32 Barb., 358.) And rights are not lost by want of strict performance, if the failure was caused by act of God.   (*Wolfe* v. *Howes*, 20 N. Y., 197; *Clarke* v. *Gilbert*, 26 id., 279; *Baldwin* v. *N. Y. Life Ins. Co.*, 3 Bosw., 530; *Worth* v. *Edmonds*, 52 Barb., 40.)   The failure is relievable in equity on the ground of accident.   (2 Story Eq., § 1315.)

Whether subsequent or precedent, the condition was waived, and defendant is estopped from setting up a failure in punctual payment.   (*Buckbee* v. *The U. S. Ins. Co.*, 18 Barb., 541; *Ruse* v. *Mut. Ben. Life Ins. Co.*, 26 Barb., 556; *Trustees, etc.*, v. *Brooklyn F. Ins. Co.*, 19 N. Y., 305; *Government* v. *Nat. Prot. Ins. Co.*, 25 Barb., 189.)

The loss occurred within the year, as the mortal stroke was received before its expiration. (Citing, in analogy, *Crosby* v. *N. Y. Mut. Ins. Co.*, 5 Bosw., 369; *Coit* v. *Smith*, 3 John. Cas., 16; 1 Phil. on Ins., § 1148; *Miller* v. *Eagle Ins. Co.*, 2 E. D. Smith, 268.)

*H. W. Johnson*, for the respondent, argued, with other points, that payment was a condition precedent, and by non-performance of the condition the policy became void, and was not in force at the time of the death. (*Wark* v. *Blunt*, 12 East, 183; *Nightingale* v. *State Mut. L. Ins. Co.*, 5 R. I., 38; *Inman* v. *Western Fire Ins. Co.*, 12 Wend., 452; *Hammond* v. *Am. M. L. Ins. Co.*, 10 Gray, 366; *Boulton* v. *Am. In. L. Ins. Co.*, 25 Conn., 542.) Plaintiff voluntarily assumed the condition, and as this contract was personal, was bound to perform it, and performance *cypres* would not revive or renew the insurance. (*Wark* v. *Blunt, supra;* *Oakley* v. *Martin*, 1 Kern., 25; *Pike* v. *Butler*, 4 Comst., 360; *Tarleton* v. *Stamforth,* 5 T. R., 695; S. C., 1 B. & P., 471; *Lord* v. *Woolsey*, 2 H. Bl., 574.) Even if there were days of grace given, the condition of the indulgence was that payment be made during the life. (*Simpson* v. *The Accidental Death Ins. Co.*, 2 C. B., N. S., 257; 89 E. C. S.; *Pritchard* v. *The Mer. & Tradesman M. L. Ins. Co.*, 3 C. B., 624; 91 E. C. L.) There being no insurance at the time of the death, tender of the premium after that could not, without defendant's assent, create a liability. (Cases *supra.*) The condition was not one imposed by law, but by the contract of the parties, and strict performance is excused only by the consent of the defendant or some act on its part preventing performance. (Broom's Leg. Max., 118; *Pike* v. *Butler, supra;* *Harmony* v. *Bingham*, 2 Kern., 99; 1 H. Bl., 433; 47 R., 94; 87 R., 267; 13 East, 533.) The excuse is not alleged in defence, but asserted in support of an action, in which case the more stringent rule applies. (*Oakley* v. *Morton* and *Pike* v. *Butler, supra.*) Custom cannot be resorted to, to vary the conditions of the contract. (*Barrett* v. *Duke of Bedford*, 8 T.

R., 602 ; *Payne* v. *Purridge*, 12 M. & W., 727 ; *Wadsworth* v. *Alcott*, 2 Seld., 64 ; *Wheeler* v. *Newbold*, 16 N. Y., 392 ; *Dawson* v. *Kittle*, 4 Hill, 107 ; *Turner* v. *Burrows*, 8 Wend., 144.) All prior and contemporaneous agreements are merged in the written contract. (*Wolfe* v. *Meyers*, 3 Sand., 7 ; *Erwin* v. *Saunders*, 1 Cow., 249 ; *Tibbets* v. *Percy*, 24 Barb., 39.) The policy was forfeited before death, not terminated by death.

GRAY, Com. The proviso in the policy for its continuance in force beyond the 15th day of July, 1862, rendered it indispensable that the requisite premium for another year should have been paid on or before that day ; its payment was manifestly a condition precedent to the continuance of the policy for another year. (*Ruse* v. *The National Life Ins. Co.*, 23, N. Y. 516, 518.) The payment of the premium was an act which could have been performed by any other person than the plaintiff's husband ; its payment did not necessarily depend upon his continued capacity or existence ; and hence, although he was, shortly prior to the expiration of the policy, when about to pay the premium, rendered incapable by the act of God, she is without the rule that relieves a party from the consequences of an omission to do an act rendered impossible by omnipotent power. (Broom's Leg. Max., 6th Am. edition, 178, 179, and cases there cited.) It is claimed, that because Howell was, about two hours before the expiration of the policy, so fatally stricken, that he at once became and remained in a dying condition until the next day, when he died, that he was, within the meaning of the policy, dead before it expired. It must be borne in mind that this is not a policy upon property but upon life. It is not enough that his life was in such peril that no hope was left of a partial recovery, and that so far as his continued existence could have benefited the plaintiff or her children by any provision he could have made for their comfort, his life to them may, in that respect, have been worthless. It was not against his ill health or against any attack of apoplexy and paralysis

or fatal epidemic she was insured, but against his death from any cause other than those excepted in the policy ; if it was not so, and he had been, on the day before the policy expired, in the last stage of consumption and from that cause in a dying condition and had died the next day after it had expired, the defendant would have been liable. The length of time a diseased man may, before death, be in a dying condition, whether from sudden attack or long disease, is undefined. Howell may have been attacked two days or more before the expiration of the policy and remained in what is ordinarily understood as a dying condition until a day or more after it expired, and the result would be that in cases of this kind, if, from satisfactory evidence, a jury should find that the life insured was stricken with disease and death two days before the policy expired and lived until after its expiration, the insurer would be liable. And thus, in order that a party, for whose benefit a policy is issued, may determine upon his rights under it, his first duty would be to consult the doctor to learn whether his patient is in a dying condition, instead of his policy to learn with certainty that, if he is alive when his policy expires, the insurance will terminate.

The admission that it was the usage of the defendant, in dealing with other persons whose lives it insured, to allow the insured party some days of grace within which to pay the annual premium, and that the insurance was effected in reference to that usage, and that it was understood and agreed between the parties, at the time it was affected and the policy issued, that if anything should happen to Howell to prevent his paying the premium on the day whenever the same became payable, the policy should not thereby become void, but should continue in full force for a reasonable time thereafter, so that the premium could be paid, was subject to a well-grounded objection. It amounted to a proposition to substitute a custom for a plain provision contained in the policy itself, and in clear conflict with its provisions, and hence unavailable to the plaintiff, as was also the parol agree-

ment made at the same time the insurance was effected and the policy issued, and for the same reason. After what was understood and agreed at the time the insurance was effected, there was, on an occasion where an annual premium was paid, the same understanding and agreement, a part of which was, that if anything should happen to Howell to prevent his paying the premium on the day it became payable, the policy should not become void, but continue in force for a reasonable time thereafter, so that the premium could be paid, this being after the insurance was effected and the policy delivered, was binding upon the parties. (*The Trustees of the First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 19 N. Y., 305, 307.) The admission of this agreement was followed by another, viz.: That by the act of God Howell was prevented from paying the premium on the day it became payable, and the further admission that the premium was tendered to the defendant within a reasonable time thereafter; and that after the expiration of ninety days from notice of the death of Howell, the defendants were requested to pay the insurance, and refused to comply with the request. The death of Howell, under the circumstances, rendered the agreement to perform a waiver of the condition precedent, and the tender, within what is conceded to be a reasonable time, followed by the notice and demand of payment, entitles the plaintiff to a reversal of the judgment of the General Term.

EARL, C. It is stated in the case that the jury, under the direction of the court, rendered a verdict for the plaintiff, "subject to the opinion of the court upon a case to be made by the plaintiff containing the objections and exceptions," and that the court further directed "that such objections and exceptions be heard in the first instance at the General Term." It is somewhat in doubt whether the court intended to direct a verdict subject to the opinion of the General Term or intended to direct a verdict for the plaintiff, and orders the exceptions, which the defendant had taken, to be heard in the first instance at the General Term. It could not do both, and

probably did not intend to; and as this was not a proper case for a verdict subject to the opinion of the General Term, it must be held that the court intended to do a right thing and order verdict for the plaintiff, and that a motion for a new trial on the part of the defendant upon its exceptions be heard in the first instance at the General term. We must so treat it upon this appeal.

The policy of insurance, upon which the action was brought, contained the clause: " And it is hereby agreed that this policy may be continued in force from time to time until the decease of the said George R. Howell, provided that the said assured shall duly pay or cause to be paid to the said company annually, on or before the 15th day of July in each and every year, the sum of one hundred and thirty-eight $\frac{50}{100}$ dollars." On the 15th day of July, 1862, Howell went to his place of business, prepared and intending to pay the said annual premiums; but before he did so, he was stricken down with paralysis, and died the next day, without having made the payment.

If the clause which I have quoted from the policy had in no way been modified, I should have no hesitation in holding that the plaintiff could not recover. Payment was a condition precedent to the continuance of the policy, and no mere accident or act of God, however controlling, could continue the policy in force after the pay day without payment. This could be done only by the agreement or consent of the defendant, properly given, or by some act which would estop the defendant from denying payment. But, at the trial, the counsel for the defendant admitted " that it was understood and agreed by and between the defendant and the said George R. Howell, at the time the said insurance was effected, and the policy was issued, and also thereafter when the annual premium was paid, that if anything should happen to him to prevent his paying such premium on the day whereon the same became payable, the said policy should not thereby become null and void, but should continue in full force for a reasonable time thereafter, so that the said premium could be

paid; that by the act of God he was prevented from paying the said premium on the 15th of July, 1862, and that the same was tendered and offered to the defendant within a reasonable time thereafter."

Here it is admitted that, at the time the policy was issued, it was agreed as stated. We have no right to assume that that was not a valid agreement, as not in writing. As the parties admitted that it was "agreed," we must hold the admission to extend to everything essential to a valid agreement, and must assume that the agreement was in writing. Hence this agreement must be construed in connection with and as really a part of the policy. It was not an agreement that the policy might be revived after it had been forfeited and become null and void. It was an agreement to continue the policy in force after the 15th of July in any year, for a reasonable time, to enable the premium to be paid. Instead of requiring prepayment of the premium, it gave a credit for a reasonable time. It was not an agreement which would allow an insurance upon the life of a dead man, but it continued the policy in force, so that there was no forfeiture of the policy or termination of the insurance, provided that payment was made within a reasonable time, no matter whether the person whose life was insured was dead or alive. Hence if there was no other agreement than the one here alluded to, there could be no reason for saying that the policy was not in force at the time of the death of Mr. Howell.

But it is further admitted that at a time when the annual premium was paid, the same agreement was made; and I think we must, for the same reason, assume that this was in writing, and this agreement, even in the absence of the other one, was sufficient to continue the policy in force. And it would unquestionably have had the same effect if the agreement had been by parol. (*Trustees, etc.,* v. *Brooklyn Fire Insurance Co.,* 19 N. Y., 305.)

Hence, in any aspect we can view this case, it comes here with an admission, substantially and in effect, that the policy was in force at the time of Howell's death. This may be a

broader admission than the defendant intended to make. But we must take it as it is, and give it all the effect its terms authorize and require; and this leads to a reversal of the judgment of the General Term, and judgment for the plaintiff upon the verdict, with costs.

HUNT, C., dissenting.    My brethren are of the opinion that the judgment of the General Term in this case should be affirmed, except for the admission contained in the "tenth" item of the case.    I am not able to find a reason in that source for a reversal.    It is recited in the ninth item that it was admitted to have been the usage of the company to allow some extension or days of grace beyond the pay day, within which to pay the annual premium, and that the defendants were accustomed to receive it, and that the policies continued in full force and effect, and that such usage was known to Mr. Howell.    The tenth item was as follows, viz.: "That it was understood and agreed by and between the defendants and the said George Howell, at the time the said insurance was effected and the policy issued, and also thereafter when the annual premium was paid, that if anything should happen to him to prevent his paying such premium on the day when the same became payable, the said policy should not thereby become null and void, but should continue in full force for a reasonable time thereafter, so that the said premium could be paid; that by the act of God he was prevented from paying the said premium on the 15th of July, 1862, and that the same was tendered and offered to the defendants within a reasonable time thereafter."    It is said that this contains an absolute admission of an agreement that the policy should be and remain in force for a reasonable time after the pay day, whether the party insured continued to live or whether he in fact died before such reasonable time elapsed.    The appellant's counsel considers these facts as presenting a fit case for the application of the doctrine of estoppel *in pais*.

The answer given by the respondent's counsel, that the original agreement was in writing, that the subsequent agree-

ment being by parol was void, is not satisfactory. It does not appear from the case that this agreement was by parol. And, again, a subsequent agreement may be by parol and the original agreement afford a sufficient consideration for the modification. (*Trustees* v. *Brooklyn F. M. Co.*, 19 N. Y., 305; 25 Barb., 189.) We must, therefore, look into the agreement itself.

The complaint alleges that Howell did not intend to abandon the insurance, but expected to pay the premium on the 15th of July, 1862, and had made his preparations for that purpose, but was prevented by the sudden and severe illness, which caused his death. It also avers that the defendants were accustomed to receive the annual premiums on life policies after the time when the same became payable, and to treat the same as valid and effectual payments upon the policy; that this policy was made in reference to that usage, and that it was understood and agreed between defendants and Howell when the policy was issued, and subsequently, that if anything should happen to him to prevent his paying when the premium became due, the insurance should not become void, but should continue thereafter, a reasonable time, to allow him to make the payment of the premium. Some significance may possibly attach to the averment, that Howell himself was to make the payment after the lapse of the time referred to. The intention of the defendants under this usage and the effect of their agreement, as admitted, are identical. Indeed, the agreement was a practical application of the effect of the usage to the case in hand. This would present a case where a life insurance company was in the habit and practice of receiving small premiums for the issuing of large policies of insurance upon the lives of persons already dead. To bring it to the case of Mr. Howell, who, according to this construction, was only one of a numerous class, the case was this: This company agree with Mr. Howell that if he should die on the 15th of July of any year, after twelve o'clock at noon of that day, or within a few days thereafter, if any one on his behalf should then pay to the company the sum of $138

they would at once issue or renew a policy upon his life for one year, for the sum of $5,000. They would, in short, agree positively to pay $5,000 for the consideration of $138. This is the inevitable result of the construction which I am considering. It is agreed that in default of payment at the day " the-policy shall not become void, but shall continue in force for a reasonable time thereafter, so that the premium could be paid." " The policy shall continue in force." This, it is said, keeps it in existence as a valid insurance for several days after the death of Mr. Howell. " So that the premium can be paid." This, it is said, provides that when, after his death, the premium shall be so paid, the vitality of the policy continues, so as to compel the payment of the $5,000. It is as already stated, an agreement to insure the life of a man who is dead at the time of making the agreement. On the other hand, the language we are considering is capable of a construction sensible and reasonable. While a practice to insure the life of dead men would be absurd, a practice to extend the time of payment for a few days beyond law day and then to receive payment from those who continued alive and in good health would be sensible and profitable. This is the fair construction of the agreement with Mr. Howell. This insurance, when commenced, was upon the life of a man of the age of thirty-six years, at an annual premium of $138. He had paid for nine or ten years. If, by failure to pay at the day prescribed, his policy should be declared forfeited, and he should take out a new one, his premium would be much larger than was required by the original policy. He would be compelled to pay a premium of $200 or $250. To avoid this result, the company adopted the usage referred to, and made the agreement with Mr. Howell, alleged in the complaint and admitted in the tenth item. The expression, " so that the said premium could be paid," is in harmony with this construction. While it would be absurd and unreasonable to receive a premium of any amount less than the sum insured, for the life of one already dead, it would be right and just to overlook a few days' delay by not exacting

an advanced premium, but to continue in force the existing policy at the same annual premium.

Upon the construction contended for, the policy would be without consideration as to all beyond the amount of premium paid. A hands to B, or promises to him, $100; in consideration whereof B promises to pay A at once $1,000. What is the consideration for the $900? I can see none. If A owes B $1,000, and in consideration of $100 paid accepts that amount in full satisfaction of the debt, it is no satisfaction. He may immediately sue A for the balance. The principle of the case is the same.

For affirmance, HUNT and LEONARD, CC. For reversal, LOTT, Ch. C., and GRAY and EARL, CC.

Judgment reversed, and judgment ordered for the plaintiff upon the verdict with costs.