(Lake Co. Common Pleas, Feb. Term, 1891.)

## CRANDALL v. FARMERS' MUTUAL UNION FIRE AND LIGHTNING INSURANCE ASSOCIATION.

---

*Mutual and stock companies—Distinction as to notice—*

(1.) A party insured in a mutual fire association organized under sec. 3686, *et seq.,* R. S., becomes a member by signing the constitution and by laws and is bound to know what its rules and regulations are while in old line or stock companies a policy holder is charged with notice of only such as are brought to his notice in the application or policy.

*Assessments presumed to be necessary—*

(2.) Unless rebutted by proof to the contrary an assessment levied at a meeting of the board of directors and officers of a mutual insurance company for payment of losses and incidentals, will be presumed to be "necessary," within the meaning of that term as used in the policy or by laws.

*Assessments must be paid within limit—*

(3.) No recovery for a loss can be had on a fire insurance policy issued to a member of a mutual insurance company organized under secs. 3686 to 3690, R. S., where he has "refused" or neglected" to pay the "necessary assessments" thereon within the time limited by its laws, unless the condition as to the time of payment thereof has been waived or the time extended by the officers of the association.

*When payment not required within limit—*

(4.) Where a member of such an association received notice from the secretary of the company directing him to pay the assessment levied to the collector, naming him, when he should call at his (assured's) house, the expiration of that time while waiting for the collector to call would not avoid the policy.

*Same—Extension of time—*

(5.) And where the collector called, and informed assured that he would not be required to pay the assessment at once, if assured had reason, knowing the rules of the company, to believe that the collector had authority to extend the time, his failure to pay as first described would not avoid the policy.

The judgment in this case was affirmed by circuit court, Febrauary term, 1892, and by the supreme court, 52 Ohio St., 674, unreported.

---

The plaintiff in error is a mutual protection or insurance association organized under secs. 3686 to 3690, R. S.

September 30, 1885, the defendant in error made application in writing to said association for insurance on his dwelling house and other property in Madison, Lake county. The usual form of policy was issued to him, October 4, 1885. August 4, 1887. Crandall received notice of an asessment made by the directors of $3.50 on a $1,000, amounting on his policy to $4.55. The assessment was never paid by Crandall.

The dwelling house described in the policy was totally destroyed by fire March 27, 1888, more than six months after the assessment was by the terms of the policy and the by laws of the association due and payable.

Crandall claimed that the time for payment of his assessment was extended by the collector to a period beyond the date of the fire or to such time as he could get the money and pay it.

Evdence as to such waiver or extension was introduced at the trial and the court left it with the jury to determine whether there was such extension. Verdict and judgment for defendant in error for the amount of his loss.

The members are directed by sec. 3690, R. S., to adopt a constitution and by laws, which shall be binding upon all members alike. The constitution and by laws are attached to the application for membership, which must be signed by everyone joining the association, and by signing the application the applicant signs such constitution and by laws and agrees to be bound by them and becomes a member of the association.

Among other provisions in the by laws are the following:

Article 5. sec. 1: All losses and expenses shall be paid by assessment levied for that purpose.

Article 6, sec. 1: It shall be the duty of each member of the association within thirty days after receiving notice of an assessment to pay to the treasurer the amount assigned as his portion thereof.

Article 4, sec. 4: Refusal or neglect to pay the necessary assessment will cause a forfeiture of protection in the association.

Article 8, sec. 14: Any of the above by-laws of this association shall not be altered or modified except at an annual meeting, and then not without the consent of a majority of those present and voting.

Charge to the Jury.

CANFIELD, J.

Gentlemen of the Jury: The plaintiff in this case, Daniel Crandall, has filed his petition in this court against the defendant, The Farmers' Mutual Insurance Company, of Thompson, Geauga county, Ohio, in which he alleges that the defendant is a corporation duly organized under the laws of Ohio for the purpose of insuring the property of the members of the corporation against loss or damage that may occur by fire or lightning, and that it is as such corporation doing business under the statutes of the state, and that as such a corporation the plaintiff became a member of the company on or about October 4, 1885, and that by the terms of a certain application made by him to the company for insurance, that he subscribed his name to the constitution and by laws of the company, and asked for insurance as well as to become a member of the corporation, and that for and in consideration of the agreements and money paid by the plaintiff to the defendant, that the defendant accepted the proposition and issued a policy of insurance to him to secure and indemnify him against loss by fire or lightning upon certain property that is mentioned in the petition, not only the dwelling house of the plaintiff and the household goods contained therein, but also a large amount of other property that is not in controversy in this action, the insurance claimed by the plaintiff amounting in all to the sum of thirteen hundred dollars; and the plaintiff alleges on or about March 27, 1888, that the house thus insured by the defendant company was totally destroyed by fire, and that the personal property in the house, which was insured as claimed by the plaintiff for the sum of one hundred and fifty dollars, was also totally destroyed, excepting one sewing machine which was included, which the plaintiff claims was of the value of ten dollars, which was saved. That the balance was totally destroyed, and that he had performed all the conditions and stipulations required of him to be performed by the by laws and regulations of the company, and he says that he is entitled to recover from the defendant the four hundred dollars, the insured value of the house, and the one hundred and fifty dollars, less the value of the sewing machine, which the plaintiff admits was saved, to be deducted from the one hundred and fifty dollars; so that what the plaintiff asks, in substance, by this petition is a judgment for five hundred and forty dollars, and the interest thereon from the time when it ought to have been paid according to the terms of the policy. That is the claim of the plaintiff.

The plaintiff also alleges in his petition that there had been an assessment made of four dollars and fifty-five cents the fall previous to the loss by fire of this property, and he says that such assessment had not been paid; and he gives as a reason why it had not been paid, that it was owing to the fact that the defendant had waived a strict compliance with the terms of the policy, or in other words they had not required it to be paid of him, that he was ready and willing to pay and that he did tender the money to them after the loss by fire.

To this petition of the plaintiff thus interposed, the defendant has filed an answer to which I call special attention; the defendant first admits that it is a corporation, duly incorporated and organized, and is doing business; that it issued the policy to the plaintiff; the defendant also admits the destruction by

fire of the property mentioned in the plaintiff's petition, and denies all other allegations and averments contained in the plaintiff's petition.

Further, the defendant says, and for a further defense, that on the ————day of 1887, a necessary assessment was duly levied by said defendant on the policy holders and members of said association of three dollars and fifty cent on the thousand, making an assessment of four dollars and fifty-five cents on said plaintiff, payable on or before December 5, 1887, of which assessment the plaintiff was duly notified. The defendant then alleges in its answer that, by the trms of such policy issued to the plaintiff and the by laws of said association, made a part of said policy, it was provided that a refusal or neglect on the part of any policy, holder or member to pay any necessary assessment within thirty days after notice of the same, should cause a forfeiture of protection in said association.

That is the averment made by the defendant, that said plaintiff had failed and neglected to pay said assessment for more than thirty days after he had received due notice of the same, and had not paid the same at the time of said destruction of said property by fire, and that by reason of said failure and neglect, said plaintiff's right to protection on said assessment had been and was forfeited at the time of said loss by fire, wherefore he asks to be dismissed.

To these allegations, thus made, a new matter by the defendant, the plaintiff has filed a reply in which he says, first, that he denies each and every allegation contained in the answer that would constitute a denial of the allegation in the defendant's answer that there was a provision in the by laws of the company that neglect or refusal to pay an assessment for the period of thirty days after notice should cause a forfeiture of the right of protection to the insured; he further says that if any of the assessments were made payable prior to said fire loss, which he does not know and therefore denies, said company duly waived payment of the same before, at the time and after same was so due, and that by reason of said waiver said assessment, if any, was not paid.

Now, gentlemen of the jury, the statute of Ohio authorizes the organization of insurance companies of the kind and character mentioned in the plaintiff's petition; the statute itself provides that a certain number the persons may join together for the purpose of protecting each other from loss or damage by fire, lightning, storms, and so forth. Another section of of the statute provides, or the same section of the same statute provides, that they shall not be at liberty to issue any policy to any person except those who are members and have signed the constitution and the by laws; so that it would be an authority exercised on the part of the state to permit companies thus to organize themselves together for the purpose of mutual protection, each person being a member of the corporation; and the following section provides that all persons who sign such constitution shall be considered and held to be members of the association and shall be held in law to comply with all of the provisions and requirements of the association. The statute also provides that the company also shall have power to pass by laws and make such regulations as they in their judgment may determine will be for the best interest of the company.

And we say to you, as bearing upon this branch of the case, that the defendant in this action being a corporation, can only do business through its legally constituted and authorized officers, as provided by the statute under which they are organized; and so long as they act in accordance with the statute under which they are organized, and in accordance with the provisions of the constitution and by laws authorized by statute, they have the right thus to act and are bound by it.

And the difference, so far as it applies in this particular respect, between what is called an old line or stock company and a mutual insurance company, where each and all of the members are themselves part of the corporation, is simply this: In an old line company, as it is termed, where the party insured is in no way connected with, but is a stranger to the assurer, or the insurance company in which he is insured, then he is not presumed in law to know anything as to what the rules and regulations of the company that insures him are, except in so far as they are brought to his notice by the application or by the terms of the policy of the insurance issued to him, while with a mutual insurance company, organized under the provisions of this statute, a person who becomes a member by signing the constitution and the by laws of the company, is bound to know, being one of the company, what the rules and regulations of the company are; he is bound to know this at his own peril, for he is one of them as much as anyone else is, and the officers, in all that they do, in all their rules and in all of their regulations, are acting as much under his authority as they are under the authority of anyone else. If he himself has the power, as one of the members, to designate who shall be the officers, he is a part of the institution himself, and being such, is bound to know at his own peril what the rules and regulations of the company are.

Now the statute gave to this defendant company the right to enact its own constitution, not inconsistent with the laws of the state of Ohio; it gave them also the right to enact and be governed by such by laws as the company composed of all the members should agree upon and determine, and I call your attention, gentlemen of the jury, to some of the clauses that we deem material as bearing upon this branch of the case; and we would say to you here, that the application for insurance that is made, purporting to be signed by the plaintiff in the case, purports to contain a copy of the constitution of this company, as well as of the by laws by which the company shall be governed and controlled, and the same constitution and the same by laws are copied into and made a part of the policy that was afterwards issued, but under and by virtue of the provision of the statute, no policy could be issued until the plaintiff had signed his name, as in the application it purports to have been signed, to the constitution and by laws, and agreeing to be governed thereby.

Now, gentlemen of the jury, so far as the constitution itself is concerned it provides what the officers shall be and who may vote, how they may vote, how they shall be elected and what the objects of the organization are. The by laws make various provisions in regard to the regulation and control of the company, among those rules and regulations, thus purporting to be signed by the plaintiff, is one to which your attention has already been called by counsel in the argument, and to the court in your hearing, known as sec. 4, art. 4, the language of which, to which we wish to direct your special attention, is as follows: "Refusal or neglect to pay the necessary assessment will cause a forfeiture of protection in this association."

And first we will call your attention to this language, to the first part of the language, "refusal or neglect to pay the necessary assessments." The words "necessary assessments" means such assessments as are necessary to be levied for the purpose of paying losses that have occurred during the year, and the incidental, legitimate expenses of carrying on the business of the corporation; that is what is meant by the term "necessary," and the presumption of law is that when the board of directors have met, together with the officers of the company and have determined upon what amount it was necessary to levy for the purpose of paying losses for the year and the incidental necessary expenses, then the presumption of law is that the amount that is thus levied by the corporation is a necessary assessment. Then we say to you, gentlemen of the

Vol 8—43.

[COPYRIGHT, 1901, BY CARL G. JAHN.]

jury, you are to presume that such assessment was a necessary assessment, as no proof has been introduced tending to show in this case that this was not a necessary assessment.

I again call your attention to the language here used as bearing upon one of the issues that is made by the pleadings in this case; "refusal or neglect to pay the necessary assessments will cause a forfeiture of protection in this association." When, under this provision of the statute and of this by law, would a refusal or neglect to pay the necessary assessment cause a forfeiture of protection in the association? In this sec. 4 of art. 4, there is no provision in express language that refusal or neglect to pay the necessary assessments within thirty days from the time notice is given will cause a forfeiture of protection in the association. Now the question would naturally arise in the mind of the jury and in the mind of the court, as to what length of time must this neglect or refusal continue in order to work a forfeiture of the right of protection to the assured, or the plaintiff in this case; and in the absence of anything else, if there was anything else in the by laws to explain this, we should say to you, as a matter of law, that after it had become due and payment had been demanded therefor, if payment was neglected or refused for an unreasonable length of time after such demand; in such case it would void or forfeit the right of the assured to protection; so that to speak in plain, direct language, if, after notice had been given of the assessment and payment demanded, if the assured waited or refused for an unreasonable length of time to pay the assessment without the consent of the company then he would forfeit his right to protection under this section, for this does not specify any particular time within which it shall be paid.

But, gentlemen of the jury, this is to be taken in connection with another provision that is found in sec. 1 of art. 6 of the by laws of the company; and in the latter part of that section we find this language: "It shall be the duty of each member of the association, within thirty days after receiving such notice, to pay to the treasurer the amount assigned as his portion of the assessment;" so that under this provision a member of this company, when he had received notice of an assessment, in the absence of anything else, it was his duty to see to it that the assessment was paid within thirty days from the time he received the notice; and if, without the consent of the officers of the company, he delayed it for a longer period than that, then we say to you, as a matter of law, that from the expiration of that time, if his buildings were burned or his property de-

stroyed by fire, he would have no indemnity, although he might be a member of the company.

This provision proceeds further, and says that if any of the members fails to pay his or her assessment within the time specified, that is, the thirty days, the secretary shall call on the delinquent person or persons for the collection of the same, together with five per cent. for collection, and if the delinquent fails to make settlement the secretary shall proceed to collect the same with five per cent. additional. Now, so far as the plaintiff was concerned, if he was a member of the company and was insured in this company, and signed the by laws and constitution, as authorized by statute, he was bound to take notice of each and all of these provisions.

Now, it is alleged by this plaintiff that this notice was issued, and perhaps there may be no controversy between counsel as to the time when this notice of this assessment was issued. Proof has been introduced tending to show by the postal mark upon the envelope, that this notice was issued from the office of the company on August 4, 1887, being the August prior to the time of the alleged destruction of the property by fire, and this notice has been read in your hearing, and under the constitution and the by laws it was the duty of the plaintiff to have paid that assessment within thirty days, if the by laws so provided, and he was bound to know that such was their provision for the reason that he was a member of the company.

The notice which was issued and which was read in your hearing purports to show upon its face and upon the notice, the number of losses that the company had sustained during the previous year, for the payment of which it was necessary to make assessments upon the members of the company; and, following, we find this language; "our assessment according to the above rata is $4.55, which please pay to E. B. Griswold, your collector, who will call at your house on the fifth day of September next or as soon thereafter as he can reach you; by leaving the exact change at the house if you are not at home, will be a great help in saving expense, as the collector cannot call but once." I have only read this part of it. "Signed E. J. Clapp, secretary."

Now, gentlemen of the jury, we call your attention to this provision of the notice, having said to you that in the absence of anything else it was the duty of the plaintiff to have paid the assessment within the thirty days, according to the terms of the by laws of the company of which he was a member. Now I call your attention to this as bearing upon the question as to what the plaintiff had a right to

understand from this notice, as to whether or not the officers of the company had any right to waive the payment of this assessment within the thirty days within which it was the plaintiff's duty to pay it.

Now, I find in the by laws a provision that "the above by laws of the association are not to be altered or modified except at an annual meeting, and then not without the consent of a majority of the members present and voting."

That is contained in sec. 14, art. 8. Section 13, art. 8, preceding this, provides, as a by law, that the board of directors shall have authority to pass by laws for the management and efficient working of the institution. So that the board of directors would have authority to make by laws providing for the efficient working and management of the institution, and whatever the board of directors may have done, it would not be inconsistent with or a violation of the express provisions of these by laws or of the statute, and would be binding upon the company as well as upon all its members, and if the board of directors or officers of the company should see fit to serve a notice upon a member that an assessment had been made, and should notify him at the same time, either directly or by implication, that he need not pay the same within the thirty days, but that he might pay it to the treasurer or collector after the expiration of thirty days, the fact that such member should wait, by reason of such notices, for the collector, to come to his house after the expiration of the thirty days, would not in law void the policy or work a forfeiture of the right of prosecution, for the presumption of law is, that if the secretary of the company issued a notice of that kind, like the one to which I have called your attention, in giving to the party against whom the assessment was made, the plaintiff in this case, the right to wait before he made his payment until the collector did call upon him, even if it was after the thirty days, he would not lose any of his rights; and the presumption of law would be that the secretary was acting under the authority of the board, and that they had passed some rule or regulation authorizing him thus to instruct members, and such a state of facts would not constitute a waiver of the right to protection during such time.

Now, gentlemen of the jury, we challenge your attention to this: When was it that this notice was served? Was it received on the fifth day of August? Was the party notified by the secretary of the company and was he asked to pay it to Mr. E. B. Griswold when he should call at his house on the fifth day of September, or as soon thereafter as Mr. Griswold was able to get there? If he was, and

the plaintiff was then ready and willing to pay, there would be no waiver of his policy, for not only in law but in common sense, if a man is ready to pay his assessment to an insurance company as soon, to the person and at the time that the secretary shall direct him to pay it, there can be in such case no waiver of his protection, because he acts in accordance with what the secretary has told him he might do.

Now, we call you attention to the evidence bearing upon this branch of the case, and I say further, that if Mr. Griswold was acting as one of the officers of the company, as the treasurer, and called as the treasurer to collect the same, and the plaintiff had been directed by the secretary of the company to make the payment to Griswold as such treasurer, and he saw fit to extend the time for three days or a week, or for any reasonable length of time in accordance with any authority that he possessed from the company, that while the time was thus delayed or extended by the direct authority of Mr. Griswold, whom he was asked to pay the assessment, would not be a waiver or a forfeiture of the right of the plaintiff to protection during the time that he thus waited.

Now, it is claimed by the defendant that Mr. Griswold called upon him, and that is also conceded by the plaintiff in the case that he did call upon him, and whether or not there was any extension of time is for your determination; and as to how long an extension there was, if any, is for your determination. The plaintiff claims that he agreed to extend the time until he could pay the money at his convenience, or without distressing himself, which would be an indefinite period of time. Such an agreement as that would not bind or limit the company unless it was understood by the plaintiff at the time, and he had the right to understand from the collector or treasurer, that his rights would remain precisely the same.

If you should find that he only agreed to extend it for one week, or during the time that he was making his assessment in the township, and if the party was ready and willing to pay it within that time, you should examine the evidence as to what did transpire between Mr. Griswold and Mr. Crandall, as to any extension of time. What was the real understanding and agreement between these parties, taking all of the evidence that has been introduced in the case? Did Mr. Griswold understand, or did he say anything that gave the plaintiff the right to understand, that it would not make any difference if he did not pay that assessment until the following spring? That it might be extended to that time? And not only did Mr.

Griswold say what he understood would give such a right, but did he say anything that gave to the plaintiff the right to understand that the time of payment of the assessment could be extended until the following spring, to-wit, after the fire? Did the plaintiff so understand it and did Mr. Griswold so understand it? It is for you to say.

Now, if Mr. Griswold said nothing which gave to the plaintiff the right to understand that payment could be delayed for the period of six months or more, and the plaintiff did not so understand it, if, after the expiration of the time that Mr. Griswold actually did understand and gave him the right to understand was given for the payment of this premium, loss occurred to the plaintiff by fire, the plaintiff would have no protection whatever under this policy. But if, on the other hand you are satisfied that by fair understanding between each other, Mr. Griswold gave him to understand and he did understand that he could just as well let the matter be, it did not make any difference whether it was paid or not until the following spring, and the plaintiff, in good faith, intending to pay it, relying upon this agreement on the part of Mr. Griswold, upon what he stated, that is would make no difference with his rights, we say to you, that in such case this might well be considered to be a waiver; bearing in mind, that in considering this you are to keep in mind that the plaintiff was bound to know what all the rules and regulations of the company were for the payment of assessments, and was bound to know the necessity for the payment of assessments by the members in order to pay losses that occurred. One man would have no superior right over another to an extension of time for the payment of assessments; they all stand upon all equality; but we say to you, that this is a matter that the jury are to determine under the rules that we have given you, from all of the evidence in the case. Was the time extended by Mr. Griswold and until after the fire, down to the time of the fire? And did the plaintiff so understand it or did the plaintiff in reading over the list of losses and the amount of the assessment, as claimed by the defendant, come to the conclusion that the losses were too heavy and that he would not pay the assessment, but let the insurance go? That is the claim of the defendant and it is for you to determine.

The claim of the plaintiff is that, relying upon the statements of Griswold, that he did intend to pay, and that while such intentions were in his mind, not having been called upon by the company, that the loss occurred, and therefore he ought to recover. That is the

claim of the plaintiff.

What are the facts? Now, where a waiver is claimed, the burden of proof rests upon the party who sets up the waiver, and in this case it is the plaintiff. The plaintiff must satisfy you, by a fair preponderance of the evidence, that the defendant did waiver, or intend to waiver, or at least did give to the plaintiff the right to understand that it would make no difference whether or not he made the payment of the assessment prior to the following spring or not. If you find that there was a waiver under these rules, then we say to you, that although the payment was not made, that the policy was still in force, that protection would not be defeated so long as the member acted in good faith, under the instructions of the officers of the company. All that any one could be required to do would be to do what the officers of the company required; and if that was plaintiff's understanding of it and Mr. Griswold gave him the right to so understand it, then the protection would not be voided.

Now, gentlemen of the jury, you will have these papers all in evidence before you, bearing upon this question, and under the rules of law that the court has given you and the by laws and regulations of the company, you should determine this question as to whether or not there was not a waiver. There seems to be but little controversy between the parties, except so far as it relates to the question of the waiver, as to whether or not there was a provision in the by laws of the company that neglect or refusal to pay for the period of thirty days would cause a forfeiture. We say to you that, in the absence of any waiver, refusal to pay within thirty days would cause a forfeiture of the right of protection, and that refusal to pay providing there was no waiver, but if the notice from the secretary did not require payment, but informed the plaintiff that he might have a period beyond the thirty days, that would be a waiver, and then he would be required to pay within a reasonable time after he was notified by the secretary and treasurer that the same should be paid.

The law requires that parties shall act in good faith toward each other and do and perform substantially what they agree to do; the law does not recognize any slight failure in the performance of a contract, but it must be of some importance, in order to void a contract, and we say that in determining this you should exercise your reason, judgment and common sense. Are you satisfied by a fair preponderance of the evidence in the case that Mr. Griswold did use such language as gave Mr. Crandall to understand, the right to understand, that the payment might be delayed until the following spring? If he did, and Crandall so understood it, and acted in good faith upon it, we say to you that the company would be bound by it and it would be a waiver, in the absence of any agreement that is must be paid within a reasonable time after the expiration of the thirty days. If there was no time fixed after the expiration of the thirty days, when the constitution and by laws provided that is must be paid, then, as a matter of law, it might be paid when the company called for it, or within a reasonable time thereafter, or within a reasonable time after expiration of the time to which it may have been extended, if there was any extension of time. Now, if you find that there was a waiver, you should find for the plaintiff. If you fail to find there was a waiver your verdict should be for the defendant. If you find for the plaintiff there is but little controversy of the amount of your finding which would be $540, with interest according to the policy, as we understand from the counsel upon both sides.

Note. In the supreme court, *Burrows & Jerome*, for plaintiff in error: *May on Insurance*, secs. 63, 146, 147;*Barrett v. Insurance Co.*, 7 Cush., 175; *Buffum v. Insurance Co.*, 3 Allen, 360; *Hale v. Insurance Co.*, 6 Gray, 169; *Brewer v. Insurance Co.* 14 Gray, 203; *Baxter v. Insurance Co.*, 1 Allen, 294; *Smith v. Insurance Co.*, 19 Ohio St., 287; 16 *Ency. of Law*, 81; 86 *Ill.*, 479; 5 *Western Rep.*, 98—22 *Mo.*; *Miller v. Insurance Co.*, 6 Central Rep., 324; 1 *Disn.*, 355; *Phoenix M. Ins. Co. v. Hoeffler*, 20 C. C., 131; *Pitney v. Glens Falls*, 65 N. Y. 21.

*G. W. Alvord*, for Defendant in Error, cited: 2 *Herman on Estoppel*, sec. 1204, rule 3;*Pratt v. Insurance Co.*, 130 N. Y., 206, 219; *Hiner v. Michigan Mutual Assn.* 63 Mich., 338; 8 *Am. St.*, 554; 1 *Tex.*, 151; 114 *Ill.*, 463; 78 *Cal.* 49; 81 *Cal.*, 340; 71 *Iowa*, 689; 4 *Ky.*, 110, 118; 69 *Wis.*, 224; 146 *Mass.*, 249, 286; 67 *N. Y.* 478; 42 *Me.*, 259; 25 *Conn.*, 207, 542; 116 *Pa. St.*, 591; 50 *Mich.*, 200; 64 *Mich.*, 372; 106 *U. S.* 30, 35; 96 *U. S.*, 234, 572; 44 *Conn.* 72; 78 *Wis.*, 74; 111 *Ind..* 462; 16 *Am. and Eng. Ency.*, 83, notes 1, 2; 11 *Am. and Eng. Ency.* 308, 309, 310; 8 *Am. St.*, 554; 17 *Am. St.*, 660; 120 *N. Y.*, 496; 19 *Am. St.*, 772, note 783; *Alexander v. Insurance Co.*, 67 Wis., 422; *Marcus v. Insurance Co.*, 68 N. Y., 625; *Dilleber v. Insurance Co.*, 76 N. Y., 567; *Sheldon v. Insurance Co.*, 26 N. Y., 460, 465; *Devine v. Insurance Co.*, 32 Wis., 471, 477; *Howell v. Insurance Co.*, 44 N. Y., 276, 283.